UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| APTIM CORP. | * |
| | * |
|       Petitioner, | * |
| | * |
| v. | *   CIVIL ACTION NO. |
| | * |
| DORSEY RON MCCALL | * |
| | * |
| | * |
|       Respondent. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PETITION TO COMPEL ARBITRATION AND STAY
LOUISIANA STATE COURT PROCEEDINGS**

PETITIONER, Aptim Corp. ("APTIM"[1]), by and through its attorneys, for its Petition to Compel Arbitration and Stay Louisiana State Court Proceedings against RESPONDENT, Dorsey Ron McCall ("McCall") (collectively the "Parties"), alleges on knowledge as to its own actions, and otherwise upon information and belief, as follows:

**PRELIMINARY STATEMENT**

1.    Defendant McCall is attempting to manipulate the judicial process to circumvent an indisputably arbitrable issue. McCall is a former highly-compensated executive of Shaw and then CB&I. He left CB&I in January 2016 and is subject to an Employment Agreement that includes a two year noncompete and nonsolicitation agreement, which remain in force until January 2018 ("Employment Agreement"). That Employment Agreement contains an arbitration

---

[1]    Petitioner APTIM acquired the Capital Services operating segment of Chicago Bridge & Iron Company N.V. ("CB&I"). CB&I acquired most of this business when it merged with The Shaw Group, Inc. ("Shaw") in 2013. This Petition includes facts that took place before, during and after Shaw's businesses were sold to CB&I and later again sold to APTIM. For the sake of clarity, this Petition refers to each entity as it was properly called at the time when the facts described took place. Unless otherwise specified, all references herein to CB&I and Shaw involve individuals, rights and interests that have been assigned to APTIM.

provision. In late June 2017, Shaw/CB&I assigned to APTIM all rights to enforce the restrictive covenants contained in the Employment Agreement.

2. APTIM recently learned that almost immediately after retiring from CB&I in January 2016, McCall entered into an agreement to work with an affiliate of Bernhard Capital Partners Management LP ("BCP"), a firm that competes directly with APTIM, in violation of his Employment Agreement. In May 2017, he became the Chief Executive Officer ("CEO") of Allied Power Management, LLC ("Allied"), APTIM's direct competitor. In that role, he oversaw Allied's poaching of 15 senior employees, all assigned to one of APTIM's most important accounts, that of Major Client 1 ("MC1"). McCall also oversaw Allied's solicitation of MC1 itself. His actions on behalf of BCP and Allied are in blatant violation of the Employment Agreement, and APTIM has suffered significant damages as a result of this breach – including the loss of a significant client generating millions of dollars in annual revenue. APTIM seeks to pursue its rights against McCall in arbitration, as clearly set forth in his Employment Agreement.

3. Despite the fact that the Employment Agreement provides for arbitration under the auspices of the American Arbitration Association ("AAA"), McCall has obstructed APTIM at every turn. McCall seeks to avoid this obligation to arbitrate with the AAA and would prefer to exploit a forum that he finds favorable—the 19th Judicial District for the Parish of East Baton Rouge ("19th JDC").

4. The arbitration clause in the Employment Agreement clearly contemplates that the employer (as opposed to the employee) has the discretion to seek injunctive relief either in court or through arbitration, although a claim for damages by either party is subject to mandatory arbitration. Shaw sought an injunction against McCall in the 19th JDC in June of 2017. After

2

4837-2166-9709 v1
2941093-000002 08/21/2017

APTIM acquired the business line at issue on June 30, 2017, Shaw moved to dismiss its lawsuit for injunctive relief and APTIM commenced a AAA proceeding against McCall for both injunctive relief and damages pursuant to its assignment agreement. Now, McCall is making the specious argument that APTIM waived its right to arbitrate as a result of Shaw seeking an injunction in the 19th JDC (which it was entitled to do under the clear terms of the Employment Agreement).

5. Because this arbitration provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), and in light of McCall's obstructionist tactics in the 19th JDC, APTIM asks this Court to grant its petition to compel arbitration and to issue an order staying the 19th JDC proceedings, which are now unnecessary and duplicative.

**PARTIES**

6. Petitioner APTIM is a Delaware corporation with its principal executive officers in The Woodlands, Texas. APTIM acquired CB&I's Capital Services operating segment on June 30, 2017. It is a leading provider of operations and maintenance support services; environmental engineering and remediation; infrastructure engineering; procurement, construction and decommissioning; program management for disaster response; and emergency response and disaster recovery for private sector and federal, state and local government customers.

7. Respondent McCall is a former employee of CB&I and Shaw. McCall was employed by Shaw and then CB&I from 2002 until January 1, 2016. At the time of his retirement, he was the President of the Facilities & Plant Services Division of CB&I. McCall is now the CEO of Allied, a direct competitor of APTIM, which is based in Baton Rouge, Louisiana. Upon information and belief, McCall resides in Lake Charles, Louisiana.

3

**JURISDICTION AND VENUE**

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because this civil action is between citizens of different states, and the amount in controversy exceeds $75,000.

9. This Court also has jurisdiction over this action because the Parties mutually contracted for arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*

10. Venue is proper in this District pursuant to 9 U.S.C. § 4, which states that a petition to compel arbitration should be filed in the district in which the parties agreed to arbitrate disputes; the Parties contracted to arbitrate in New Orleans, Louisiana.

**BACKGROUND**

**I.  MCCALL VIOLATED HIS NONSOLICITATION AND NONCOMPETE AGREEMENTS**

11. McCall is a former employee of Shaw/CB&I and is subject to the Employment Agreement, which includes a Nonsolicitation and Noncompete Agreement ("Nonsolicitation/Noncompete"). (*See* Ex. 1, Employment Agreement.)

12. Section 3 of the Nonsolicitation/Noncompete includes a "Covenant Not to Compete," under which, for a period of two years after McCall's separation, McCall agreed he would not:

> directly or indirectly, whether personally or through agents, associates, or co-workers, whether individual or in connection with any corporation, partnership, or other business entity, and whether as an employee, owner[], officer[], or otherwise, establish, carry on, or engage in a business similar to that of the Company or any of its affiliates [in a designated area that includes Baton Rouge, Louisiana].

(Ex. 1, Nonsolicitation/Noncompete § 3(d).)

13. Additionally, in that contract, McCall agreed that he would not:

4

> [e]stablish, own, become employed with [], or participate in any way in a business engaged in engineering, construction, procurement maintenance, Environmental. [or] pipe fabrication services [to the extent that the Company provides the same type of services].

(*Id.* § 3(d)(ii).)

14. Further, McCall agreed to be restrained from soliciting or providing, *either directly or indirectly*, to customers of the Company "engineering, construction, procurement, maintenance, Environmental, [or] pipe fabrication services." (*Id.* § 3(d)(i) (emphasis added).)

15. Under Section 2 of the Nonsolicitation/Noncompete, regarding nonsolicitation of employees, McCall further agreed that, for a period of two years after employment, he would not:

> directly or indirectly, either on Executive's own account or jointly with or as a manager . . . , officer, employee . . . , partner . . . , owner . . . , or otherwise on behalf of any other person, firm, or corporation, offer employment to, solicit, or attempt to solicit away from the Company or its affiliates any of their officers or employees or offer employment to any person who, during the six (6) months immediately preceding the date of such solicitation or offer, is or was an officer or employee of the Company or any of its affiliates.

(*Id.* § 2.)

16. Further, he agreed not to "directly or indirectly, at any time . . . , use or otherwise exploit Confidential Information to the detriment of the Company." (*Id.* § 6(b)(ii).)

17. On or about December 15, 2015, McCall notified CB&I that he intended to voluntarily retire at the end of his Initial Term of Employment, which was slated to expire on January 1, 2016. He stopped working on or about January 1, and his retirement was considered effective as of January 31, 2016.

18. APTIM recently learned that McCall entered into a consulting arrangement in 2016 with BCP Energy Services Fund, LP, an affiliate of BCP, a position he held throughout

2016 and into 2017. In that role, he assisted in pursuing acquisitions in the energy industry, under the leadership of Jim Bernhard, former CEO of Shaw, who had created a private equity firm to compete with APTIM.[2]

19. Going one step further in his direct competition with APTIM, on or about May 30, 2017, McCall took the position of CEO of the newly-formed Allied – a company that is a self-proclaimed competitor of APTIM.

20. Both of these positions are in direct violation of the Employment Agreement.

21. Between June 2 and June 15, 2017, Allied (under the leadership of McCall) poached 15 of CB&I's most senior employees dedicated to one of its most important accounts, MC1. As McCall had been appointed the CEO of Allied, this conduct violated the nonsolicitation provisions of his Employment Agreement. APTIM has been assigned the right to enforce Shaw's and CB&I's rights under McCall's Employment Agreement pursuant to a written assignment agreement.

22. After stealing 15 key employees, Allied, under McCall's leadership, turned its attention to MC1, where it sought to steer business away from APTIM. On August 4, 2017, MC1 notified APTIM that it was terminating without cause its relationship with APTIM. The steps taken by McCall and Allied are in direct violation of his Employment Agreement.

---

[2] *See* Stephanie Riegel, *Three years after leaving The Shaw Group, Jim Bernhard has created a private equity firm that could outgrow the company he sold for $3 billion*, GREATER BATON ROUGE BUS. REPORT (June 8, 2016), https://www.businessreport.com/business/three-years-leaving-shaw-group-jim-bernhard-created-private-equity-firm-outgrow-company-sold-3-billion.

## II. THE EMPLOYMENT AGREEMENT AND NONSOLICITATION/ NONCOMPETE EACH CONTAIN AN ARBITRATION CLAUSE

23. Both the Employment Agreement <u>and</u> the Nonsolicitation/Noncompete contain arbitration clauses. The Employment Agreement, in relevant part, states the following:

> 15. <u>Arbitration</u>
> (a) Employee and the Company agree that any dispute regarding the covenants herein and/or the validity of this Agreement and its addenda, if any, shall be resolved through arbitration. . . . Any arbitration-related matter or arbitration proceeding of a dispute regarding the covenants herein and/or the validity of this Agreement and its addenda, shall be governed, heard, and decided under the provisions and the authority of the Federal Arbitration Act, 9 U.S.C.A. § 1, et seq., and shall be submitted for arbitration to the office of the American Arbitration Association ("AAA") in New Orleans, Louisiana, on demand of either party.[3]
>
> (b) Such arbitration proceedings shall be conducted in New Orleans, Louisiana, and shall be conducted in accordance with the then-current Employment Arbitration Rules and Mediation Procedures of the AAA, with the exception that the Employee expressly waives the right to request interim measures or injunctive relief from a judicial authority. Employee acknowledges that the Company alone retains the right to seek injunctive relief from a judicial authority based on the nature of the Agreement. . . . The provisions of this Section 15 shall survive and continue in full force and effect subsequent to and notwithstanding expiration or termination of this Agreement for any reason. . . . .

24. In addition, the Nonsolicitation/Noncompete states as follows:

> **Section 4.     <u>Miscellaneous Provisions.</u>**
> (d)     <u>Injunctive Relief and Arbitration.</u> Executive and the Company each acknowledge that the provisions of Section 2 and 3 are reasonable and necessary, that the damages that would be suffered as a result of a breach or threatened breach by Executive of Sections 2 and 3 may not be calculable, and that the award of a money judgment to the Company for such a breach or threatened breach thereof by Executive would be an

---

[3] The FAA governs any dispute for which there is "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal . . . ." 9 U.S.C. § 2. The United States Supreme Court has held that the FAA applies to all employment agreements except for those of transportation workers. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109 (2001).

inadequate remedy. Executive expressly consents and agrees that the Company may, in addition to any other available remedies that the Company may be entitled in law or in equity, enforce the provisions of Section 2 and/or 3 by injunctive or other equitable relief, including a temporary and/or permanent injunction (without proving a breach thereof), to prevent unfair competition, the use and/or unauthorized disclosure of trade secrets or confidential information, and/or the unauthorized solicitation of the Company's officers, employees, and customers. The Company shall not be obligated to post bond or other security in seeking such relief.
(e)    <u>Arbitration</u>.   Executive and the Company agree that any dispute regarding the covenants herein and/or the validity of this Agreement and its addenda, if any, shall be resolved through arbitration as provided in Paragraph 15 of the Employment Agreement, above.

### III.    NINETEENTH JUDICIAL DISTRICT COURT PROCEEDINGS

25.    On June 15, 2017, as a first step in pursuing its rights against McCall for his ongoing violations of the Employment Agreement, CB&I's subsidiary Shaw filed a petition in the 19th JDC to obtain injunctive relief against McCall (the "19th JDC Matter").[4] Filing a judicial request for injunctive relief was expressly contemplated in the Employment Agreement. (*See* Ex. 1, Employment Agreement § 15(b), Nonsolicitation/Noncompete § 4(d).) Allied (McCall's new employer) filed a petition to intervene in the matter on June 19.[5] On June 20, the parties entered into, and Judge Janice Clark signed, an order (the "Joint Protective Order") which provides, among other things, that "until a Preliminary Injunction hearing," McCall is "restrained, enjoined, and prohibited from violating his covenants" under the employee nonsolicitation provisions of his agreement with the Company.[6] The Joint Protective Order also required that Shaw "shall, and shall cause its affiliates to, cease threatening legal or other action"

---

[4]    Verified Petition for Temporary Restraining Order, Preliminary and Permanent Injunctive Relief, and Damages, *The Shaw Grp., Inc. v. McCall*, No. 658781 (La. 19th J.D.C. June 15, 2017). Shaw subsequently removed its claim for damages.

[5]    Allied's Petition of Intervention, *The Shaw Grp., Inc. v. McCall*, No. 658781 (La. 19th J.D.C. June 19, 2017).

[6]    Joint Protective Order ¶ 2, *The Shaw Grp., Inc. v. McCall*, No. 658781 (La. 19th J.D.C. June 20, 2017).

against anyone its knows to be an Allied employee.[7] A preliminary injunction hearing was not held.

26. On June 30, the Capital Services business segment of CB&I became APTIM through an acquisition. As part of that sale, CB&I and Shaw assigned rights to APTIM relating to McCall's Employment Agreement. Accordingly, on July 6, APTIM and Shaw filed a motion to substitute APTIM as the plaintiff in the 19th JDC Matter.[8] But after significant opposition from McCall and Allied regarding APTIM's entry into the case, APTIM and Shaw subsequently withdrew their motion.

27. To further pursue APTIM's rights against McCall, APTIM filed a Demand for Arbitration with the AAA, as everything *other than injunctive relief* must be pursued against McCall through arbitration. (*See* Ex. 2, Demand for Arbitration, *Aptim Corp. v. McCall* (AAA July 17, 2017).)

28. Shaw (the only plaintiff in the 19th JDC case) filed a voluntary **motion to dismiss that case**.[9] Shaw's motion to dismiss, which would dispose of the 19th JDC matter in its entirety, has been sitting on Judge Clark's desk for a month.

29. Meanwhile, McCall has vehemently fought all attempts by APTIM to pursue its contractually-guaranteed rights. Most relevant for this Court, McCall filed with Judge Clark in the 19th JDC a Motion to Stay the AAA Arbitration.[10] The purported grounds for that motion are

---

[7] *Id.* ¶ 3.

[8] Shaw and Aptim's Motion for Substitution of Plaintiff and for Leave to File Amended Petition, *The Shaw Grp., Inc. v. McCall*, No. 658781 (La. 19th J.D.C. July 6, 2017).

[9] Plaintiff's Motion to Dismiss With Prejudice the Amended Petition for Preliminary and Permanent Injunctive Relief, *The Shaw Grp., Inc. v. McCall*, No. 658781 (La. 19th J.D.C. July 17, 2017).

[10] Joint Motion by McCall and Allied to Stay Arbitration Filed by Aptim, *The Shaw Grp., Inc. v. McCall*, No. 658781 (La. 19th J.D.C. July 28, 2017). Pursuant to the AAA Employment Arbitration Rules, the existence of a judicial filing—even one totally lacking in any merit such as McCall's motion—results in a stay of the
*(cont'd)*

that Shaw chose to file suit in court instead of arbitrate and that Shaw and APTIM have engaged in extensive litigation (which APTIM denies).[11]  While Judge Clark has not acted on Shaw's month-old motion to voluntarily dismiss, she actually scheduled a hearing on McCall's motion to stay arbitration—in a matter that should no longer be before her—for August 29, 2017.

30. In addition, McCall has filed a barrage of motions and pleadings before Judge Clark, creating a virtual circus of the proceedings in the 19th JDC, the forum he perceives as exceedingly friendly.  On July 10, McCall filed a memorandum opposing APTIM's entry into the case.[12]  Then, *after Shaw moved to voluntarily dismiss the 19th JDC Matter (which would end the case altogether)*, McCall filed:

- a memorandum opposing Shaw's voluntary dismissal of the case,[13]
- an Answer to Shaw's June 15 petition,[14]
- a Reconventional Demand, seeking, among other things, a declaration from the 19th JDC that McCall has not violated the Employment Agreement.[15]
- through Allied, a Petition for Declaratory Judgment,[16]

---

*(cont'd from previous page)*
  underlying arbitration.  Thus, APTIM's arbitration against McCall has been stayed and nothing is permitted to move forward in that case.

[11] *See, e.g., id.* ¶¶ 1, 5–6.

[12] McCall and Allied's Joint Memorandum in Opposition to Shaw and Aptim's Motion for Substitution of Plaintiff and for Leave to File Amended Petition, *The Shaw Grp., Inc. v. McCall*, No. 658781 (La. 19th J.D.C. July 10, 2017).

[13] McCall and Allied's Joint Memorandum in Opposition to Plaintiff's Ex Parte Motion to Dismiss with Prejudice [*sic*] the Amended Petition for Preliminary and Permanent Injunctive Relief, *The Shaw Grp., Inc. v. McCall*, No. 658781 (La. 19th J.D.C. July 18, 2017).

[14] Answer and Affirmative Defenses to Verified Petition for Temporary Restraining Order, Preliminary and Permanent Injunctive Relief and Damages and Reconventional Demand, *The Shaw Grp., Inc. v. McCall*, No. 658781 (La. 19th J.D.C. July 18, 2017).

[15] Answer and Affirmative Defenses to Verified Petition for Temporary Restraining Order, Preliminary and Permanent Injunctive Relief and Damages and Reconventional Demand, *The Shaw Grp., Inc. v. McCall*, No. 658781 (La. 19th J.D.C. July 18, 2017).

- through Allied, a motion to consolidate the petition for declaratory judgment, assigned to Judge Morvant of the 19th JDC, with the 19th JDC Matter before Judge Clark that Shaw already had moved to dismiss,[17] and

- a motion for constructive contempt against *APTIM, a non-party,* for allegedly breaching Judge Clark's June 20 order, even though Allied had *opposed* APTIM's motion to substitute into the case.[18]

31. In his motion for contempt, McCall asserted that APTIM, a non-party and non-signatory to the June 20 Joint Protective Order, had violated that order's language about refraining from "threatening" legal action against an Allied employee by commencing an arbitration against McCall (as well as its lawsuit against Allied in the U.S. District Court for the Northern District of Illinois, an argument which McCall and Allied later seemed to drop).[19] APTIM appeared for a hearing held after only one full business days' prior notice, while Shaw, the signatory to the Joint Protective Order was neither present nor represented.  At the hearing, APTIM explained to Judge Clark that: (1) APTIM is not a party to the lawsuit; (2) APTIM is not named in the Joint Protective Order; (3) APTIM's actions in maintaining its Illinois federal action and the arbitration against McCall did not violate the terms of the Joint Protective Order; (4) the 19th JDC cannot legally constrain APTIM from pursuing those actions; (5) APTIM's

---

*(cont'd from previous page)*
[16]   Petition for Declaratory Judgment, *Allied Power Mgmt., LLC v. The Shaw Grp., Inc.*, No. 659639 (La. 19th J.D.C. July 18, 2017).

[17]   Motion to Consolidate, *The Shaw Grp., Inc. v. McCall*, No. 658781 (La. 19th J.D.C. July 20, 2017).

[18]   Motion for Contempt, *The Shaw Grp., Inc. v. McCall*, No. 658781 (La. 19th J.D.C. July 20, 2017).

[19]   *See id.*

pursuit of those actions are legally justified; and (6) the hearing should not be held when Shaw, the only plaintiff in the matter, was not present or represented.[20]

32. Judge Clark nonetheless found APTIM in constructive contempt, with the remedy that APTIM pay a fine for every day that it continues to pursue "any action in contravention of [the Joint Protective Order] that this Court may legally prohibit."[21]

33. On August 16, Shaw filed an Application for Writ of Mandamus with the First Circuit Court of Appeals for the State of Louisiana, requesting that Judge Clark be ordered to sign the voluntary motion to dismiss that it had filed before the contempt hearing, with prejudice, and to void all subsequent filings or decisions, including the contempt judgment, that occurred after that motion was filed.[22]

34. On August 18, APTIM, to protects its own rights, then filed a Writ of Mandamus to compel Judge Clark to sign the still unsigned contempt judgment so that it can immediately appeal that decision.[23] APTIM believes that any future argument by McCall that Judge Clark can prevent it, a non-party and non-signatory to the Joint Protective Order, from pursuing arbitration pursuant to a valid arbitration provision and governed by the FAA, is simply wrong.

35. APTIM seeks to pursue claims against McCall in arbitration because it is guaranteed such rights under the Employment Agreement. APTIM is entitled to arbitrate its legitimate dispute against McCall for his continuing violations of that contract. APTIM thus seeks from this Court an order compelling arbitration and an order staying all proceedings in

---

[20] Opposition by APTIM to Motion for Contempt, *The Shaw Grp.,* v. *McCall*, No. 658781 (La. 19th J.D.C. July 24, 2017).

[21] Minute Entry, Reasons for Ruling, *The Shaw Grp., Inc. v. McCall*, No. 658781 (La. 19th J.D.C. July 26, 2017).

[22] Shaw's Writ of Mandamus, Docket No. 2017-CW-1129, First Circuit Court of Appeal, August 16, 2017.

[23] APTIM's Writ of Mandamus, Docket No. 2017-CW-1144, First Circuit Court of Appeal, August 18, 2017.

front of Judge Janice Clark in the 19th JDC against McCall, as those claims should be heard exclusively in arbitration.

## COUNT ONE
### (Order to Compel Arbitration Pursuant to 9 U.S.C. § 4)

36. Petitioner incorporates by reference all of the above paragraphs.

37. McCall agreed to arbitrate this dispute. The Parties entered into a valid agreement to arbitrate their disputes in both the Employment Agreement and the Nonsolicitation/Noncompete. The dispute in question falls squarely within the scope of those arbitration agreements because soliciting APTIM's employees and customers, and engaging in a competing business, are violations of the agreements the Parties signed.

38. There is no legal constraint external to the Parties' agreement that forecloses arbitration of these claims.

## COUNT TWO
### (Order to Stay the 19th JDC Matter)

39. Petitioner incorporates by reference all of the above paragraphs.

40. McCall's actions in the 19th JDC Matter are operating as an obstruction to APTIM's legitimate contractual and legal rights to arbitrate its dispute with McCall. This Court has the authority to stay the pending proceedings in the 19th JDC as they pertain to McCall. If that matter is not stayed, it may contradict this Court's decision and any decision that follows in arbitration. This would result in confusion and duplicative proceedings, and would inhibit the ability of this Court to eventually enforce an arbitral award.

WHEREFORE, Petitioner respectfully requests that this Court:

A.  Issue an order compelling Respondent McCall to arbitrate all disputes at issue with Petitioner, pursuant to 9 U.S.C. § 4, enforcing the arbitration agreements entered into by the Parties; and

B.  Issue an order to stay all proceedings pending in the case captioned *The Shaw Grp., Inc. v. McCall*, Suit No. 658781, 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana, insofar as they relate to McCall.

Dated: Baton Rouge, Louisiana
August 21, 2017

Respectfully submitted,

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**

By: /s/ Phyllis G. Cancienne
PHYLLIS G. CANCIENNE (#19605)
CHRISTOPHER G. MORRIS (#28847)
Chase North Tower
450 Laurel Street, 20th Floor
Baton Rouge, Louisiana 70801
Telephone: (225) 381-7000

ANNE DERBES WITTMANN (#20584)
201 St. Charles Avenue
Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5200

**ATTORNEYS FOR APTIM CORP.**